## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DL LOGISTICS, L.C., | § | CASE NO. 13-80133 |
| | § | |
| DOME PETROCHEMICAL, L.C., | § | CASE NO. 14-31836 |
| | § | |
| DOME HYDROCARBONS, L.C. | § | CASE NO. 13-80231 |
| | § | |
| | § | Jointly Administered |
| Debtors. | § | (Chapter 11) |

## CROWN FINANCIAL, LLC'S MOTION TO AMEND FINDINGS PURSUANT TO BANKRUPTCY RULES 7052 AND 9023 [RELATED TO DOCKET NO. 171]

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

# TABLE OF CONTENTS

Preliminary Statement ................................................................................................ 1

Jurisdiction .................................................................................................................. 3

Background .................................................................................................................. 3

    A.    Origination of Note ........................................................................................ 3

    B.    First Renewal and Extension of Note ............................................................ 4

    C.    Assumption and Ratification of Note by Hydrocarbon and Third Renewal .................. 5

    D.    Fourth and Fifth Renewals ............................................................................ 6

    E.    June 1, 2011 Transaction Between Original Lenders and Hydrocarbon ........ 7

    F.    Commencement of the Bankruptcy Cases and Original Lenders' Proof of Claim ........ 8

    G.    Crown Purchases Note from Original Lenders ............................................... 9

    H.    Bid Procedures Order and Motion to Credit Bid ........................................... 9

Relief Requested ....................................................................................................... 12

Basis for Relief ......................................................................................................... 12

Analysis of Findings ................................................................................................. 16

    A.    Crown's Claim Is Valid and Enforceable ................................................... 16

    B.    Crown's Liens Are Valid and Enforceable .................................................. 19

        1.    Crown's Lien is Not Barred By Statute of Limitations ...................... 22

        2.    Crown's Lien is Valid and Enforceable Against Debtor ..................... 22

        3.    Crown's Lien is Not Subject to Avoidance By a *Bona Fide* Purchaser or Judgment Lienholder ............................................................................ 24

            a.    Subordinated Deed of Trust Filed In 2011 Is a Renewal Agreement .............. 25

            b.    UCC Financing Statements Filed In 2006 Is a Renewal Agreement ............. 27

            c.    *Bona Fide* Purchaser and Judgment Lienholder Had Inquiry Notice and Do Not Satisfy Requirements to Avoid Liens Under Texas Law .................................. 28

Conclusion ................................................................................................................ 33

# TABLE OF AUTHORITIES

Cases

Baxter v. Palmigiano,
  425 U.S. 308, 96 S. Ct. 1551, 47 L. Ed. 2d 810 (1976) ........................................................... 15

Braniff Inv. Co. v. Robertson,
  124 Tex. 524, 81 S.W.2d 45 (Comm'n App. 1935) ...................................................... 27

Bright & Co. v. Holbein Family Mineral Trust,
  995 S.W.2d 742 (Tex. App. 1999) ....................................................................... 18

Chapman Parts Warehouse, Inc. v. Guderian,
  609 S.W.2d 317 (Tex. Civ. App. 1980) .............................................................. 23

Cooper v. Irvin,
  110 S.W.2d 1226 (Tex. Civ. App. 1937) ........................................................... 22

Crego v. Lash,
  13-12-00100-CV, 2014 WL 1272220 (Tex. App. Mar. 27, 2014) .......................................... 17

Daniel v. United States,
  234 F.2d 102 (5th Cir. 1956) ...................................................................... 2, 15

Eyre v. McDonough Power Equip., Inc.,
  755 F.2d 416 (5th Cir. 1985) ........................................................................ 14

Fed. Mortgage Co. v. State Nat. Bank of Corsicana,
  254 S.W. 1002 (Tex. Civ. App. 1923) .............................................................. 27

First Nat. Bank v. Watson,
  271 S.W. 438 (Tex. Civ. App. 1925) ................................................................ 23

Fisker Auto. Holdings, Inc.,
  2014 Bankr. LEXIS 230 (Bankr. D. Del. Jan 17, 2014) .................................................... 3

Flack v. First Nat. Bank of Dalhart,
  148 Tex. 495, 226 S.W.2d 628 (1950) .............................................................. 29

Fontenot v. Mesa Petroleum Co.,
  791 F.2d 1207 (5th Cir. 1986) ...................................................................... 13

Garcia v. Cantu,
  363 B.R. 503 (Bankr. W.D. Tex. 2006) ........................................................... 2, 15

Havee v. Belk,
  775 F.2d 1209 (4th Cir. 1985) ................................................................... 24, 25

Hinojosa v. Butler,
  547 F.3d 285 (5th Cir. 2008) ....................................................................... 15

Hue Nguyen v. Chapa,
  305 S.W.3d 316 (Tex. App. 2009) ................................................................. 30

Hughes v. Stovall,
  135 S.W.2d 603 (Tex. App. 1940) ................................................................. 22

Hydrospace-Challenger, Inc. v. Tracor/MAS, Inc.,
  520 F.2d 1030 (5th Cir. 1975) ...................................................................... 21

In re Abell,
  66 B.R. 375 (Bankr. N.D. Miss. 1986) ............................................................. 20

In re Davison,
  738 F.2d 931 (8th Cir. 1984) ....................................................................... 24

In re Hancock,
  126 B.R. 270 (Bankr. E.D. Tex. 1991) ........................................................ 23
In re IFS Fin. Corp.,
  669 F.3d 255 (5th Cir. 2012) ...................................................................... 24
In re Jack Kardow Plumbing Co.,
  451 F.2d 123 (5th Cir. 1971) ...................................................................... 21
In re Johnson,
  08-40492, 2009 WL 2982783 (Bankr. E.D. Tex. Sept. 11, 2009) ........................... 17
In re Ludlum Enterprises, Inc.,
  510 F.2d 996 (5th Cir. 1975) ................................................................ 24, 25
In re Perry,
  11-35205, 2013 WL 504859 (Bankr. S.D. Tex. Feb. 8, 2013) ............................. 23
In re Prime Ventures, Ltd.,
  68 B.R. 686 (N.D. Cal. 1986) ...................................................................... 27
In re Tilton,
  297 B.R. 478 (Bankr. E.D. Tex. 2003) ......................................................... 32
Jones v. Kelley,
  614 S.W.2d 95 (Tex. 1981) ......................................................................... 26
Matter of Hamilton,
  125 F.3d 292 (5th Cir. 1997) .......................................................... 24, 29, 30
Medal, L.P. v. Kvaerner Process Sys. US, Inc.,
  14-03-01334-CV, 2004 WL 1192894 (Tex. App. June 1, 2004) ........................... 18
Mercer v. Daoran Corp.,
  676 S.W.2d 580 (Tex. 1984) ....................................................................... 32
Miles v. Martin,
  159 Tex. 336, 321 S.W.2d 62 (1959) ........................................................... 26
Mladinich v. United States,
  371 F.2d 940 (5th Cir. 1967) ...................................................................... 20
N.L.R.B. v. Chester Valley, Inc.,
  652 F.2d 263 (2d Cir. 1981) ....................................................................... 15
Northside Realty Associates, Inc. v. United States,
  424 U.S. 977, 96 S. Ct. 1483, 47 L. Ed. 2d 747 (1976) ...................................... 21
Phelan v. Middle States Oil Corp.,
  210 F.2d 360 (2d Cir. 1954) ....................................................................... 13
Portman v. Earnhart,
  343 S.W.2d 294 (Tex. Civ. App. 1960) ......................................................... 30
Seydler v. Keuper,
  92 S.W.2d 278 (Tex. Civ. App. 1936) ..................................................... 22, 27
Shivers v. Grubbs,
  747 F. Supp. 434 (S.D. Ohio 1990) .............................................................. 13
Stine v. Stewart,
  80 S.W.3d 586 (Tex. 2002) .................................................................. 18, 19
The Cadle Co. v. Butler,
  951 S.W.2d 901 (Tex. App. 1997) ......................................................... passim
Theriault v. Silber,
  547 F.2d 1279 (5th Cir. 1977) .................................................................... 21

United States v. Crescent Amusement Co.,
 323 U.S. 173, 65 S. Ct. 254, 89 L. Ed. 160 (1944) ................................................ 13
United States v. Northside Realty Associates, Inc.,
 474 F.2d 1164 (5th Cir. 1973) ............................................................................. 21
Veal v. Thomason,
 138 Tex. 341, 159 S.W.2d 472 (1942) ................................................................. 26
Ward v. Portillo,
 12-08-00377-CV, 2009 WL 4983797 (Tex. App. Dec. 23, 2009) .......................... 16
Westland Oil Dev. Corp. v. Gulf Oil Corp.,
 637 S.W.2d 903 (Tex. 1982) ................................................................................ 30
Woods v. William M. Mercer, Inc.,
 769 S.W.2d 515 (Tex. 1988) ................................................................................ 17

Statutes
11 U.S.C.A. § 101(5) ................................................................................................. 16
28 U.S.C. § 157 .......................................................................................................... 3
28 U.S.C. §§ 1408 and 1409 ........................................................................................ 3
28 U.S.C. §§ 157 and 1334 .......................................................................................... 3
Tex. Bus. & Com. Code Ann. § 3.104(a) .................................................................. 17
Tex. Bus. & Com. Code Ann. § 3.118(a) .................................................................. 17
Tex. Bus. & Com. Code Ann. § 9.109(d) .................................................................. 20
Tex. Bus. & Com. Code Ann. § 9.203(a) .................................................................. 23
Tex. Bus. & Com. Code Ann. § 9.203(b)(1)-(3) ......................................................... 23
Tex. Bus. & Com. Code Ann. § 9.515(e) .................................................................. 20
Tex. Civ. Prac. & Rem. Code Ann. § 16.035 ...................................................... passim
Tex. Civ. Prac. & Rem. Code Ann. § 16.036 ...................................................... passim
Tex. Civ. Prac. & Rem. Code Ann. § 16.065 .............................................................. 18
Tex. Prop. Code Ann. § 13.002 ............................................................................... 30

Rules
Fed. R. Bankr. P. 7052 .......................................................................................... 12, 13
Fed. R. Bankr. P. 9013 ............................................................................................. 10
Fed. R. Bankr. P. 9023 ............................................................................................. 13
Fed. R. Civ. P. 52 ................................................................................................. 12, 13
Fed. R. Civ. P. 59 .................................................................................................... 13
Tex. R. Civ. P. 94 ................................................................................................... 17

**TO THE HONORABLE DAVID R. JONES,**
**UNITED STATES BANKRUPTCY JUDGE**

Crown Financial, LLC ("<u>Crown</u>") files this motion (the "<u>Motion</u>") to amend the findings in the *Order Denying Expedited Motion of Crown Financial, LLC For Approval To Credit Bid Under 11 U.S.C. Section 363(k) And For Adequate Protection Under 11 U.S.C. Section 363(e)* [Docket No. 171] (the "<u>Order Denying Motion to Credit Bid</u>"), and in support thereof submits the *Affidavit of George M. Britton In Support of Crown Financial, LLC's Motion to Amend Findings* (the "<u>Affidavit</u>")[1] and would respectfully state to the Court as follows:

## PRELIMINARY STATEMENT

1.      Crown purchased a secured claim in this bankruptcy case.  The Order Denying Motion to Credit Bid not only denies Crown the right to credit bid and adequate protection, but it also contains findings that appear to establish that Crown does not have an enforceable claim and lien.  Crown respectfully asks the Court to amend the Order Denying Motion to Credit Bid to limit its effect.  Otherwise, Crown faces a loss of more than $1.5 million.

2.      Crown filed a motion to credit bid in accordance with the Credit Bid Order (defined below) that required parties wishing to credit bid their claims to seek prior approval from the Bankruptcy Court.  At the July 9, 2014 hearing on the Motion to Credit Bid, the Court found "that Crown Financial, LLC has failed to sustain its burden to establish that it is the holder of a valid perfected allowed secured claim. I've received no evidence regarding addressing the adequate protection issue. On that basis I will deny the motion."[2]

---

[1]      "When a motion for a new trial is based on affidavits, they must be filed with the motion. The opposing party has 14 days after being served to file opposing affidavits. The court may permit reply affidavits." FED. R. CIV. P. 59.

[2]      The transcript of the July 9, 2014, hearing on the Motion to Credit Bid is referenced below and attached hereto as Exhibit F.

3.       Crown was unable to introduce sufficient evidence on the record to establish the validity of its lien.   The Objecting Parties (defined below) did not introduce evidence at the hearing.  The findings that are harmful to Crown are based entirely on negative inferences from the evidentiary record.  These negative inferences should not have been made because the parties objecting to Crown's claim and lien — not Crown — carry the initial burden on these matters. *See, e.g.*, Daniel v. United States, 234 F.2d 102, 112 (5th Cir. 1956) (J. Cameron dissenting) ("Where the party on whom the burden of proof rests has failed to make out a prima facie case, the absence of the adverse party, or his failure to testify, raises no unfavorable inference against him.") (citing Corpus Juris Secundum, 31 C.J.S., Evidence, § 118); *see also*, Garcia v. Cantu, 363 B.R. 503, 513 (Bankr. W.D. Tex. 2006) (An adverse inference "is only applied when the party with the burden of proof has first introduced sufficient evidence to make his *prima facie* case."etc).  Specifically, under Bankruptcy Rule 3003, Crown has *prima facie* evidence of the validity of its secured claim by virtue of the Debtor Debtor's Schedule of Liabilities and its Proof of Claim.   The burden then shifts to a party wishing to object to Crown's claim or challenge the validity of Crown's lien to file a claim objection or commence an adversary proceeding, respectively.

4.       Crown should not be precluded based on the findings in the Order Denying Motion to Credit Bid to establish the validity of its claim or lien in a future claim objection hearing or adversary proceeding.

5.       Moreover, the findings in the Order Denying Motion to Credit Bid were unnecessary for the Court to deny Crown the right to credit bid and adequate protection. Pursuant to *Fisker Auto. Holdings, Inc.*, cited by the Debtors in its Reply [Dkt. No. 160], it would have been sufficient for the Court to find that because the validity of the lien has not been

determined, Crown's right to credit bid can be denied.  *See* <u>Fisker Auto. Holdings, Inc.</u>, Case No. 13-13087-KG, 2014 Bankr. LEXIS 230, at *16 (Bankr. D. Del. Jan 17, 2014).

6.      Furthermore, the findings in the Order Denying Motion to Credit Bid are based on an erroneous legal argument advanced by the Objecting Parties.  Specifically, the Objecting Parties misconstrue §§ 16.035 and 16.036 of the Texas Civil Remedies and Practice Code to mean that Crown's lien is barred by the statute of limitations because extension agreements were not filed.  As explained below, this is not what §§ 16.035 and 16.036 provide.  Under the correct application of §§ 16.035 and 16.036, Crown has a valid lien and the Debtor will not be successful in avoiding the lien under § 544(a) of the Bankruptcy Code.

7.      Based on the foregoing, Crown should not be forever precluded from demonstrating that it has a valid claim against the Debtor and a valid lien against the Debtor's property.  Crown respectfully requests that the Order Denying Motion to Credit Bid be clarified accordingly.

## JURISDICTION

8.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference of the United States Bankruptcy Court for the Southern District of Texas.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (K).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

9.      The statutory predicates for the relief sought herein are Bankruptcy Rule 7052, as made applicable to contested matters by Bankruptcy Rule 9014(c), and Bankruptcy Rule 9023.

## BACKGROUND

**A.      Origination of Note**

10.      On or about November 13, 1998, David A. Lawson and George M. Britton, Trustees (the "<u>Original Lenders</u>") entered into a loan with West Bay Organics, L.C.  ("<u>Original</u>

Borrower"), as evidenced by a Promissory Note ("Note"), dated November 13, 1998.  (Ex. A-1 at 1.)[3]  The Note was in the original principal amount of $750,000.  (Ex. A-1 at 1.)

11.     The Note was secured by a Deed of Trust and Security Agreement, dated November 13, 1998 ("Deed of Trust"), executed by Original Borrower in favor of K. Gregory Erwin ("Erwin"), Trustee, for the benefit of Original Lenders.  (Ex. A-2 at § 1.1(m).)  The Deed of Trust secured the Note with a 47.798 acre tract of property in Chambers County (the "Property"), as well as certain personal property.[4]  (Ex. A-2 at §§ 1.1(I)(i)-(xiii) and 2.1.)

12.     On November 16, 1998, the Deed of Trust was recorded in the Official Public Records of Chambers County, Texas under File Number 98390270.  (Ex. A-2.)

13.     Also on November 16, 1998, a UCC Financing Statement was recorded in the Official Public Records of Chambers County, Texas, under File Number 98390298 (the "1998 UCC Financing Statement (Chambers County)").   The 1998 UCC Financing Statement (Chambers County) describes the collateral as "all consumer goods, equipment, farm products, inventory, and other personal property" on the Property, and all proceeds thereof. (Ex. A-5 at 1.)

14.     On November 17, 1998, a UCC Financing Statement was filed with the Texas Secretary of State under File Number 98-228354 (the "1998 UCC Financing Statement (SOS)") with the same description of collateral. (*See* Ex. A-4.)

**B.     First Renewal and Extension of Note**

15.     The Original Borrower defaulted under the Note.  (*See* Exhibit A at ¶3.)  The Original Borrower and the Original Lenders entered into the Renewal and Extension of

---

[3]     The exhibit reference "A-1" refers to Exhibit 1 of Exhibit A.  This Exhibit reference scheme is used throughout this Motion.

[4]     In connection with the Deed of Trust executed for the benefit of Original Lenders, Rodman A. Eggen, individually and as trustee of the F.S. Grantor Trust, agreed to subordinate a lien on the Original Tract created for his benefit by a prior deed of trust, dated August 7, 1995.  (*See* Ex. A-3.)

Promissory Note, dated December 1999 ("<u>First Renewal</u>") in which the parties reinstated and extended the Note's maturity date to December 31, 2000.

16.     The Note continued to remain unpaid, and was in default as of December 31, 2000.  (Ex. A at ¶5.)

## C.     Assumption and Ratification of Note by Hydrocarbon and Third Renewal

17.     In 2000 and 2001, the Property was sold through foreclosure, and a Substitute Trustee's Deed with Bill of Sale was recorded in the Official Public Records of Chambers County, Texas, under File Number 01505284. (Ex. B.)   Dome Hydrocarbons, L.C. ("<u>Hydrocarbon</u>") bought a portion of the Property containing a plant for $1,000,000 in 2001, subject to the encumbrances of the liens created by the Note and Deed of Trust.[5]

18.     On October 6, 2003, Hydrocarbon and Original Lenders entered into a Note Assumption and Ratification Agreement ("<u>Assumption and Ratification Agreement</u>") reinstating the Note.  (Ex. A-7 at 2.)  Hydrocarbon assumed all obligations of the Original Borrower on the Note and all extensions and modifications thereto, and the parties extended the Note's maturity date to September 30, 2006.  (Ex. A-7 at 2.)

19.     Also on October 6, 2003, Hydrocarbon and Original Lenders executed the Third Renewal and Extension of Promissory Note ("<u>Third Renewal</u>") in which the parties reinstated and extended the Note maturity date to September 30, 2006.[6]  (Ex. A-8.)

---

[5]     The Assumption and Ratification Agreement states that Dome Petrochemicals, L.P. bought the balance of the 47.798 acres for $618,500, and extinguished the Original Lenders' second lien on such tract.  (*See* Ex. A-7 at 1.)

[6]     The parties appear to have considered the Assumption and Ratification Agreement to be the "second" renewal.

**D.      Fourth and Fifth Renewals**

20.      On June 1, 2006, Hydrocarbon and the Original Lenders entered into a Fourth Renewal, Extension and Modification (the "Fourth Renewal").  (Ex. A-9.)  The Fourth Renewal extended the Note's maturity date to June 1, 2010.  (Ex. A-9 at 2.)

21.      As part of the Fourth Renewal transaction and in exchange for the Original Lenders' agreement to renew the Note and extend the maturity date, on June 14, 2006, Hydrocarbon granted, as additional security for the Note and the performance of obligations under the Deed of Trust, an Assignment of Leases and Rents ("Assignment of Rents").  (Ex. A-10.)  The Assignment of Rents was recorded in the Official Public Records of Chambers County, Texas on June 20, 2006, File Number 15866, Vol. 874, page 482.  (Ex. A-10.)

22.      On May 26, 2006, a UCC Financing Statement was filed with the Texas Secretary of State, under File Number 06-0018067513 covering the Original Lender's collateral relating to the Property and in certain related operating permits (the "2006 UCC Financing Statement (SOS)").  (*See* Ex. A-11.)

23.      On May 30, 2006, a UCC Financing Statement was also filed in the Official Public Records of Chambers County, Texas under File Number 15064, Volume 867, Page 504, covering the same collateral (the "2006 UCC Financing Statement (Chambers County)").  (Ex. A-12.)

24.      On February 26, 2010, the Original Lenders and Hydrocarbon executed a Fifth Renewal, Extension and Modification of Promissory Note ("Fifth Renewal").  (Ex. A-13.)  The Fifth Renewal extended the maturity date on the Note from June 1, 2010 to July 1, 2011.  (Ex. A-13 at ¶1.)

25.      On April 14, 2011, a UCC Financing Statement Amendment was filed with the Texas Secretary of State under File Number 11-00111692 (the "2011 UCC Financing Statement

(SOS)").  (Ex. C.)  The 2011 UCC Financing Statement extended the 2006 UCC Financing Statement (SOS).  (Ex. C.)

26.      On April 15, 2011, a UCC Financing Statement Amendment was recorded in the Official Public Records of Chambers County, Texas under File Number 65025, Volume 1261, Page 178 (the "2011 UCC Financing Statement (Chambers County)").  (Ex. D.)  The 2011 UCC Financing Statement (Chambers County) continued the 2006 UCC Financing Statement (Chambers County).  (*See* Ex. D.)

**E.      June 1, 2011 Transaction Between Original Lenders and Hydrocarbon**

27.      On June 1, 2011, the Original Lenders and Hydrocarbon entered into a transaction consisting of four documents: (i) a Sixth Renewal, Extension and Modification of Promissory Note (the "Sixth Renewal") (Ex. A-14), effective as of June 1, 2011, (ii) an unsecured promissory note (Ex. A-15), (iii) a royalty agreement (Ex. A-16), and (iv) a Subordinated Deed of Trust to Secure Performance, dated June 1, 2011 ("Subordinated Deed of Trust") (Ex. A-17).

28.      At the time of the Sixth Renewal in 2011, the unpaid principal balance of the Note was $1,370,766.50.  (Ex. A-14 at ¶2.)  The Original Lenders agreed to reduce the sum of principal owed by $250,000 in exchange for an unsecured promissory note from Hydrocarbon for $250,000, dated June 1, 2011 (the "New Note").  (Ex. A-14 at ¶2; Ex. A-15 at 1.)  They also extended the maturity date of the Note to June 1, 2012.  (Ex. A-14 at ¶2.)  As a result of this June 2011 transaction, the new outstanding balance on the Note itself became $1,120,766.50.  (Ex. A-14 at ¶2.)

29.      Also on June 1, 2011, Hydrocarbon, Precision Chemical Processing LLC, and the Original Lenders executed a Royalty Agreement ("Royalty Agreement") providing for the payment of certain royalties.  (Ex. A-16 at § 2.1.)  The Original Lenders conditioned the acceptance of the New Note on the execution and delivery of the Royalty Agreement.  (Ex. A-16

7

at ¶B.)   The Royalty Agreement was recorded in the Official Public Records of Chambers County, Texas under File Number 67560, Volume 1280, Page 299.  (Ex. A-16.)

30.     The Royalty Agreement was secured by the Subordinated Deed of Trust to Secure Performance, dated June 1, 2011 ("Subordinated Deed of Trust").  (Ex. A-17.)  By its terms, the Subordinated Deed of Trust is subject to and subordinate to the Deed of Trust as extended by the Sixth Renewal.  (Ex. A-17 at 7.)  On July 27, 2011, the Subordinated Deed of Trust was recorded in the Official Public Records of Chambers County, Texas under File Number 67561, Volume 1280, Page 341.  (Ex. A-17.)

**F.     Commencement of the Bankruptcy Cases and Original Lenders' Proof of Claim**

31.     On April 2, 2013, D.L. Logistics L.C. filed a voluntary petition under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code").  On June 3, 2013 (the "Petition Date"), Hydrocarbon filed a voluntary petition under chapter 11 of the Bankruptcy Code.  On April 1, 2014, Dome Petrochemical L.C. (collectively with D.L. Logistics L.C. and Hydrocarbon, the "Debtors") filed a voluntary petition under chapter 11 of the Bankruptcy Code.

32.     On September 27, 2013, the Original Lenders filed a proof of claim ("Proof of Claim") [Claim Docket No. 29] against Hydrocarbon to assert a claim against Hydrocarbon pursuant to the Note and the New Note.  (Ex. A-18.)  The Proof of Claim states that as of the Petition Date, Hydrocarbon owed at least $1,570,344.47 including (i) $1,120,766.50 in outstanding principal plus  $163,179.00 in accrued unpaid interest on the Note, and (ii) $250,000 in outstanding principal plus $36,398.97 in accrued unpaid interest on the New Note, plus (iii) "certain additional fees, charges, and other amounts due under the Loan Documents, as well as Payees' attorneys' fees and costs in an as yet to be determined amount[.]"  (Ex. A-18 at 5.)

### G.    Crown Purchases Note from Original Lenders

33.    On February 10, 2014, Crown purchased from the Original Lenders all "rights, title, benefit and interest in the Note, the Loan Documents and the Bankruptcy Proof of Claim" filed against Hydrocarbon, through a Claim Purchase Agreement and Assignment.  (Ex. A-19 at § 3.)  The following day, Crown filed Notice of the Transfer of the Claim in the Bankruptcy Court on the Debtors' jointly-administered docket [Docket No. 105].   On February 13, 2014, an Assignment of Note and Liens was recorded in the Official Public Records of Chambers County, Texas under File Number 91677, Volume 1475, Page 47.  (Ex. E.)

### H.    Bid Procedures Order and Motion to Credit Bid

34.    On June 10, 2014, this Court entered the *Amended Order for Bid Procedures to Sell Real and Personal Property and Establishing the Form and Manner of Sale Notices* [Docket No. 140] (the "Bid Procedures Order").  The Bid Procedures Order provides, among other things, that any bidder that holds an allowed claim secured by assets proposed to be sold by the Debtors, and that wishes to credit bid its claim against the purchase price of the property, as permitted under § 363(k) of the Bankruptcy Code, must disclose in its bid the amount of such offset or "credit" and seek prior approval from the Bankruptcy Court.  (Bid Procedures Order at 2(b)(iii).)

35.    On June 30, 2014, in accordance with the Bid Procedures Order, Crown filed an *Expedited Motion By Secured Creditor Crown Financial, LLC For Approval To Credit Bid Under 11 U.S.C. Section 363(k) And For Adequate Protection Under 11 U.S.C. Section 363(e)* [Dkt. No. 149] (the "Motion to Credit Bid").

36.    Three parties (the "Objecting Parties") filed objections to the Motion to Credit Bid: (i) the Debtors [Docket No. 151]; (ii) Magnut Investments, LLC [Docket No. 159]; and (iii) the Official Committee of Unsecured Creditors [Docket No. 162].   Of these three parties, only one – the Committee – complied with the Local Rule requiring objections to be accompanied by

proposed orders.   *See* L. Fed. R. Bankr. P. 9013-1(h) ("Each motion, application, objection, and response filed with the court must be accompanied by a proposed order.").   The Committee's proposed order provided in relevant part:

> Upon consideration of the Expedited Motion of Crown Financial LLC ("Crown") for Approval to Credit Bid under 11 U.S.C. 363(k) and for Adequate Protection under 11 U.S.C. 363(e) (the "Motion"), the Court finds that the Motion should be denied;
>
> IT IS HEREBY ORDERED THAT the Motion is Denied.

37.     On July 9, 2014, the Court held a hearing on the Motion to Credit Bid.  (Ex. F.) At the hearing the Court made the following findings:

> I've got before me a motion filed on June 30 by Crown Financial, LLC to approve a credit bid under 363(k), as well as to provide adequate protection under 363(e).  I do find that I have jurisdiction over the matter pursuant to 28 USC Section 1334.  I find that the resolution of the motion is a core proceeding under 28 USC Section 157. And under the Supreme Court's analysis in *Stern v Marshall*, I find that I specifically have the constitutional authority to enter a final order.
>
> Based on the record that I have before me, and I am required to make a ruling based on the record that I have before me, I find that Crown Financial, LLC has failed to sustain its burden to establish that it is the holder of a valid perfected allowed secured claim. I've received no evidence regarding addressing the adequate protection issue.  On that basis I will deny the motion.

(Ex. F, 62:6-21.)

38.     On July 14, 2014, Magnut Investments, LLC submitted a proposed order denying the Motion to Credit Bid [Dkt. No. 169] and Crown filed an objection to Magnut's proposed form of order [Dkt No. 170].  On July 15, 2014, the Court entered the Order Denying Motion to Credit Bid.  The Order Denying Motion to Credit Bid was in a form substantially similar to the one submitted by Magnut Investments, LLC.  However, the Court added a qualification that the findings are based on "the available record."  Also, the Court changed the finding that stated

"The November 13, 1998 Lawson/Britton Deed of Trust is <u>void</u> . . ." to "The November 13, 1998 Lawson/Britton Deed of Trust is <u>unenforceable</u> . . ."  Presumably this change was made because no avoidance action was commenced under § 544(a) and therefore a conclusion on avoidance would be premature.

39.     The Order Denying Motion to Credit Bid has the following findings:

1.     Claims based on the November 13, 1998 Lawson/Britton Deed of Trust are barred by limitations.

2.     The maturity date stated in paragraph 1.1.m of the November 13, 1998 Lawson/Britton Deed of Trust is May 12, 1998.

3.     UCC Financing Statements were recorded in the Official Public Records of Chambers County, Texas on November 16, 1998, under File No. 98390298 and in the Secretary of State's Office on November 17, 1998, under File No. 98-228354, covering consumer goods, equipment, farm products, inventory, all personal property, documents, instruments, accounts, chattel paper and general intangibles relating to the ownership, construction, operation or development of the land, including licenses and permits.

4.     The financing statements referenced in Paragraph 3 above were not extended by the filing of continuation statements within 5 years from their original filing dates.

5.     The date that is four years from the maturity of the Note, as stated in the Deed of Trust, is May 12, 2003.

6.     UCC Financing Statements were recorded in the Official Public Records of Chambers County, Texas on May 30, 2006 under File Number 15064, Volume 867, page 504 and in the Secretary of State's Office on May 26, 2006, under File Number 06-0018067513, covering fixtures and certain permits.

7.     Continuations of the UCC Financing Statements were filed in the Official Public Records of Chambers County, Texas on April 15, 2011 under File Number 65025, Volume 1261, page 178, and with the Texas Secretary of State on April 14, 2011 under File Number 11-00111692.

8.   The November 13, 1998 Lawson/Britton Deed of Trust is unenforceable, therefore there is no security interest to support the 2006 or 2011 UCC Financing Statements.

9.   Crown failed to satisfy its burden of proof that it has a valid secured claim as of the petition date.

10.   Lacking an allowed secured claim, Crown is not entitled to credit bid.

11.   Crown has no valid lien on property of the Debtors' estates, therefore it has no right to adequate protection under 11 U.S.C. § 363(e).

12.   Crown did not establish the amount of any debt owed to it by the Debtor.

## RELIEF REQUESTED

40.   Crown respectfully requests entry of an order, substantially in the form of the proposed order attached to this Motion, pursuant Bankruptcy Rules 7052 and 9023, that amends the Order Denying Motion to Credit Bid by adding the following statement: "The findings herein are limited to the ruling on the Motion to Credit Bid and shall not be relied on for any other purpose and shall not serve as a basis to prevent Crown Financial LLC or any other party in interest from establishing the validity of the claim(s) and lien(s) based on the Note and the November 13, 1998 Lawson/Britton Deed of Trust."

## BASIS FOR RELIEF

41.   Bankruptcy Rule 7052 adopts Federal Rule of Civil Procedure 52 ("Rule 52"), except that the motion to amend findings under subdivision (b) of Rule 52 must be filed within 14 days after entry of the order.  Fed. R. Bankr. P. 7052.  Rule 52(b) provides in relevant part:

On a party's motion filed . . . after the entry of judgment, the court may amend its findings – or make additional findings – and may amend the judgment accordingly. The motion may accompany a motion for a new trial under Rule 59.

Fed. R. Civ. P. 52(b).[7]  "The primary purpose of a Rule 52(b) motion is to enable the party to obtain a correct understanding of the Court's findings, typically for appeal purposes.  In doing so the movant raises questions of substance by seeking reconsideration of material findings of fact or conclusions of law."  Shivers v. Grubbs, 747 F. Supp. 434, 436 (S.D. Ohio 1990) (citing Leishman v. Associated Wholesale Elec. Co., 318 U.S. 203, 205 (1943));  United States v. Crescent Amusement Co., 323 U.S. 173, 65 S. Ct. 254, 89 L. Ed. 160 (1944)); see also, Fontenot v. Mesa Petroleum Co., 791 F.2d 1207, 1219 (5th Cir. 1986) ("If the trial court has entered an erroneous judgment, it should correct it.") (internal citations omitted).

42.     Bankruptcy Rule 9023 adopts Federal Rule of Civil Procedure 59 ("Rule 59"), except that a motion to alter or amend a judgment shall be filed no later than 14 days after entry of the order.  Fed. R. Bankr. P. 9023.  Rule 59 provides in relevant part:

> After a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment.

Fed. R. Civ. P. 59(a)(2).  Rule 59 goes on to provide:

> When a motion for a new trial is based on affidavits, they must be filed with the motion. The opposing party has 14 days after being served to file opposing affidavits. The court may permit reply affidavits.

Fed. R. Civ. P. 59(a)(2).

43.     "[W]here new facts are presented in support of the motion for a rehearing . . . there should be a trial of those facts before a judgment based on them is entered in favor of the movant."  Phelan v. Middle States Oil Corp., 210 F.2d 360, 366 (2d Cir. 1954).  "Deference is

---

7       Bankruptcy Rule 9014 incorporates Bankruptcy Rule 7052 to contested matters.  Bankruptcy Rule 9002 provides that the word "judgment" used in the Federal Rules of Civil Procedure when applied to cases under the Bankruptcy Code means any order appealable to an appellate court.

accorded [to a trial judge's] firsthand opportunity to view the witnesses and their demeanor, and he is empowered to grant a motion for new trial when he determines that the verdict is against the great—but not merely the greater—weight of the evidence." Eyre v. McDonough Power Equip., Inc., 755 F.2d 416, 420 (5th Cir. 1985) (citing Conway v. Chem. Leaman Tank Lines, Inc., 610 F.2d 360 (5th Cir. 1980)).

44.     The Order Denying Motion to Credit Bid includes findings that appear to conclude that (i) Crown does not have an enforceable lien, and, possibly, that (ii) Crown does not have an enforceable claim.  Specifically, these harmful findings include:

> 1.  Claims based on the November 13, 1998 Lawson/Britton Deed of Trust are barred by limitations;

> 3.  The [UCC Financing Statements recorded in the Official Public Records of Chambers County, Texas on November 16, 1998, under File No. 98390298 and in the Secretary of State's Office on November 17, 1998, under File No. 98-228354] were not extended by the filing of continuation statements within 5 years from their original filing dates;

> 8.  The November 13, 1998 Lawson/Britton Deed of Trust is unenforceable, therefore there is no security interest to support the 2006 or 2011 UCC Financing Statements; and

> 11. Crown has no valid lien on property of the Debtors' estates.

45.     Under Bankruptcy Rule 3007, a party objecting to a claim carries the initial burden in connection with the claim objection.[8]  Additionally, Bankruptcy Rule 3007(b) provides that a party may not "include a demand for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim, but may include the objection in an adversary proceeding." Bankruptcy Rule 7001 defines adversary proceedings to include proceedings "to determine the

---

[8]     Bankruptcy Rule 3007 governs claim objections:  "(a) Objections to claims.  An objection to the allowance of a claim shall be in writing and filed. A copy of the objection with notice of the hearing thereon shall be mailed or otherwise delivered to the claimant, the debtor or debtor in possession, and the trustee at least 30 days prior to the hearing."

validity, priority or extent of a lien or other interests in property."  A party seeking to avoid a lien

under Bankruptcy Rule 7001 carries the initial burden.

46.     Crown was unable to get sufficient evidence into the record to establish its right to

credit bid.   However, Crown respectfully submits that the Court should not have drawn a

negative inference from the lack of evidence of Crown's enforceable claim or lien.  Where a

party "has good reason to believe that its opponent has failed to meet its burden of proof"—as

Crown believed here by virtue of the fact that there has been no ruling on a claim objection and

no adversary proceeding challenging the validity of the lien—"the rule that an unfavorable

inference shall be drawn against a party which fails to introduce evidence known to be in its

control will not apply."  N.L.R.B. v. Chester Valley, Inc., 652 F.2d 263, 271 (2d Cir. 1981); *see*

Daniel v. United States, 234 F.2d 102, 112-13 (5th Cir. 1956) ("Where the party on whom

the burden of proof rests  has failed to  make out  a  *prima facie*  case,  the  absence of  the

adverse party, or his failure to testify, raises no unfavorable inference against him.") (internal

citation omitted); Garcia v. Cantu, 363 B.R. 503, 513 (Bankr. W.D. Tex. 2006) (An adverse

inference "is only applied when the party with the burden of proof has first introduced sufficient

evidence to make his *prima facie* case.").   "In such a situation, there is a good faith belief that

there is no need to offer further evidence, and therefore no inference can properly be drawn from

non-production."  N.L.R.B. v. Chester Valley, Inc., 652 F.2d at 271; *see also*, Hinojosa v. Butler,

547 F.3d 285, 291 (5th Cir. 2008) ("[T]he Fifth Amendment does not forbid adverse inferences

against parties to civil actions when they refuse to testify ***in response to probative evidence***

***offered against them***.") (emphasis added) (citing Baxter v. Palmigiano, 425 U.S. 308, 318, 96 S.

Ct. 1551, 47 L. Ed. 2d 810 (1976)).

47.     As described below, the burden of establishing the conclusions that the Court reached with respect to the validity of Crown's claim and lien falls on the party objecting to Crown's claim and lien.  At the hearing to consider the Motion to Credit Bid, Crown only had the burden to establish the validity of its claim and lien for the purposes of credit bidding and adequate protection.  Its failure to present sufficient evidence at that hearing should not preclude Crown from arguing the law and facts to demonstrate the validity of its claim and lien in any subsequent hearing.  Otherwise, Crown and any other party in interest who wants the opportunity to establish of the validity of Crown's claim or lien in the context of a claim objection hearing or an adversary proceeding challenging the validity of Crown's lien would suffer manifest injustice by being deprived of this opportunity.

## ANALYSIS OF FINDINGS

### A.  Crown's Claim Is Valid and Enforceable

48.     Under the Bankruptcy Code, the term "claim" means "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . ."  11 U.S.C.A. § 101(5).   Finding No. 1 that  "Claims based on the November 13, 1998 Lawson/Britton Deed of Trust are barred by limitations" could be interpreted to mean that Crown does not have *any* claim arising in connection with the November Lawson/Britton Deed of Trust because any such claim is barred by statute of limitations.  Such a finding is not warranted based on the law and facts before the Court.

49.     Crown did not have the burden to establish that its claim is not barred by the statute of limitations.   Under Texas law, a statute of limitations provides an affirmative defense, and the party asserting the defense "bears the initial burden to plead, prove, and secure findings" to sustain the plea of limitations.  Ward v. Portillo, 12-08-00377-CV, 2009 WL 4983797, *1

(Tex. App. Dec. 23, 2009) (citing <u>Woods v. William M. Mercer, Inc.</u>, 769 S.W.2d 515, 517 (Tex. 1988)); *see also*, Tex. R. Civ. P. 94.  Where the debtor's defense to the claim is one with respect to which the debtor would have the burden of proof in a non-bankruptcy forum, the debtor must carry that same burden of proof in connection with an objection to claim.  <u>In re Johnson</u>, 08-40492, 2009 WL 2982783, *4 (Bankr. E.D. Tex. Sept. 11, 2009) (citing examples). Accordingly, it is the burden of the party objecting to Crown's claim to plead, prove, and secure findings that the Crown claim is barred by the statute of limitations.

50.     Crown's failure to carry its burden on its Motion to Credit Bid should not result in Crown being precluded from establishing the validity of its claim in a future claim objection hearing.  Parties that object to Crown's claim should not be able to rely on this finding in the Order Denying Motion to Credit Bid to support the legal conclusion that Crown's claim is barred by the state of limitations. Rather, the party objecting to Crown's claim should have to carry its burden of proof with respect to the statute of limitations issue.

51.     No party will be able to meet this burden because Crown's claim is not barred by the statute of limitations.  Under Texas law, the statute of limitations for negotiable instruments is six years.  Tex. Bus. & Com. Code Ann. § 3.118(a); <u>Crego v. Lash</u>, 13-12-00100-CV, 2014 WL 1272220, *5 (Tex. App. Mar. 27, 2014).  Here, the Note and New Note are both negotiable instruments subject to a six year statute of limitations because they are unconditional promises to pay a fixed amount of money that are (1) payable to order of the Original Lenders at the time they were issued; (2) payable at a definite time; and (3) do not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money.  *See* Tex. Bus. & Com. Code Ann. § 3.104(a); (*see* Exs. A-1 and A-15.)

52.     As of the Petition Date, the statute of limitations had not expired for either the Note or the New Note.  The maturity date of the Note, as renewed and extended under the Sixth Renewal, was June 1, 2012.  (Ex. A-14 at ¶2.)  The New Note was payable in its entirety with all accrued interest on June 1, 2012.  (Ex. A-15 at 1.)  Thus, the six year statute of limitations for a negotiable instrument had not tolled as of the Petition Date for either the Note or New Note.[9]

53.     Further, the statute of limitations may be avoided if the party to be charged acknowledges the debt in writing.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.065.   An acknowledgment of a debt must: (1) be in writing and signed by the party to be charged; (2) contain an unequivocal acknowledgment of the justness or the existence of the particular obligation; and (3) refer to the obligation and express a willingness to honor that obligation. Stine v. Stewart, 80 S.W.3d 586, 591 (Tex. 2002).   An acknowledgment of an existing debt creates a new obligation.  *Id.*  Whether a writing sufficiently acknowledges a debt is a question of law.  Bright & Co. v. Holbein Family Mineral Trust, 995 S.W.2d 742, 745 (Tex. App. 1999).

54.     Here, Crown's claim is not barred by the statute of limitations because there were a series of acknowledgements of existing debt between the Original Lenders, on the one hand, and the Original Borrower and the Debtor, on the other hand.  Specifically, by their express terms, the First Renewal, the Assumption and Ratification Agreement, the Third Renewal, the Fourth Renewal, the Fifth Renewal, and the Sixth Renewal all: (1) are in writing; (2) were executed by Hydrocarbon or the Original Borrower; (3) specifically acknowledge the debt owed to the Original Lenders under the Note; and (4) refer to the Note and express a willingness to

---

[9]     Even if the Note or New Note is not considered by the Court to be negotiable instruments, the statute of limitations for treatment of them as debts had not run.  The statute of limitations for claims involving a debt is four years.  Tex. Civ. Prac. & Rem. Code Ann. § 16.004; Medal, L.P. v. Kvaerner Process Sys. US, Inc., 14-03-01334-CV, 2004 WL 1192894, *1 (Tex. App. June 1, 2004).  Even applying the stricter standard, the statute of limitations had not expired.

honor the obligation.  (*See* Exs. A-6 to A-9 and A-13 to A-14.)  Accordingly, even if the statute

of limitations had passed on the Note—which it did not—the various renewal agreements served

to revive the Note under Texas law.  Stine v. Stewart, 80 S.W.3d 586, 591 (Tex. 2002).

55.     Even though Crown can demonstrate the validity of its claim at this time, a party

objecting to Crown's claim carries the initial burden to plead, prove, and secure findings.  This

issue therefore will be addressed in the context of the claim objection hearing and Crown

respectfully submits it was premature to make Finding 1 regarding the lack of a claim by Crown

by virtue of statute of limitations in the Order Denying Motion to Credit Bid.[10]

**B.     Crown's Liens Are Valid and Enforceable**

56.     In the Order Denying Motion to Credit Bid, the Court adopted several findings

submitted by the Debtors and Magnut that appear to conclude that Crown does not have a valid

lien on the Debtor's property.   These findings include:

> 4.   The [UCC Financing Statements recorded in the Official
>       Public Records of Chambers County, Texas on November
>       16, 1998, under File No. 98390298 and in the Secretary of
>       State's Office on November 17, 1998, under File No. 98-
>       228354] were not extended by the filing of continuation
>       statements within 5 years from their original filing dates.
>
> 8.   The November 13, 1998 Lawson/Britton Deed of Trust is
>       unenforceable, therefore there is no security interest to
>       support the 2006 or 2011 UCC Financing Statements.
>
> 11.  Crown has no valid lien on property of the Debtors' estates
>       . . .

---

[10]     Magnut Investments, LLC filed an objection to Crown's claim which is currently scheduled for a hearing
on August 20, 2014.

57.     As to Finding 4, while the Texas Business and Commerce Code provides a five-year period for filing continuation statements for personal property lien filings,[11] this requirement does not apply to real property liens.   Tex. Bus. & Com. Code Ann. § 9.109(d) ("This chapter does not apply to . . . the creation or transfer of an interest or lien on real property . . .").   Furthermore, if Finding 4 implies that a secured party waives its rights to file a UCC Financing Statement after the applicable five-year period has expired, this is incorrect as a matter of law.   "[E]ven though a secured party omits to timely file a continuation statement, a new financing statement may be filed, even after the initial financing statement has lapsed."   In re Abell, 66 B.R. 375, 379 (Bankr. N.D. Miss. 1986) (applying nearly identical statutory scheme based on the Uniform Commercial Code).

58.     The following two statements in these Finding 8 and 11 are conclusions of law that Crown does not have an enforceable real property lien and that Crown's does not have any valid lien on the Debtor's property:

> 8.  The November 13, 1998 Lawson/Britton Deed of Trust is unenforceable . . . ; and

> 11. Crown has no valid lien on property of the Debtors' estates.

59.     Crown respectfully submits that there was neither any basis in the evidence for the Court to have reached these conclusions nor were these findings necessary to resolve whether Crown should be permitted to credit bid.   The Fifth Circuit has held that legal conclusions are inadequate, unless they include findings on the underlying factual issues.   Mladinich v. United

---

[11]      "[U]pon timely filing of a continuation statement, the effectiveness of the initial financing statement continues for a period of five years commencing on the day on which the financing statement would have become ineffective in the absence of the filing.  Upon the expiration of the five-year period, the financing statement lapses in the same manner as provided in Subsection (c), unless, before the lapse, another continuation statement is filed pursuant to Subsection (d).  Succeeding continuation statements may be filed in the same manner to continue the effectiveness of the initial financing statement."  Tex. Bus. & Com. Code Ann. § 9.515(e).

States, 371 F.2d 940, 942 (5th Cir. 1967) (vacating and remanding judgment for the purpose of making adequate findings); *see also*, Theriault v. Silber, 547 F.2d 1279, 1280 (5th Cir. 1977) (findings inadequate in absence of "any indications of how, why, or on what basis" they were reached); Hydrospace-Challenger, Inc. v. Tracor/MAS, Inc., 520 F.2d 1030 (5th Cir. 1975) (remanded where findings were couched in conclusory terms); United States v. Northside Realty Associates, Inc., 474 F.2d 1164 (5th Cir. 1973) (remanded where court of appeals was unable to determine precise legal rationale of trial court's decision), *cert. denied*, Northside Realty Associates, Inc. v. United States, 424 U.S. 977, 96, 96 S. Ct. 1483, 47 L. Ed. 2d 747 (1976).

60.     There are at least three possible bases for Findings 8 and 11 or conclusions of law: (i) the liens are unenforceable because they are barred by the statute of limitations, (ii) the liens are unenforceable against the Debtor because the renewal statements were not filed, or (iii) the liens are unenforceable against a *bona fide* purchaser or a judgment lienholder because the renewal statements were not filed.   As set forth below, none of these bases are supported by the facts.

61.     More importantly, Crown does not carry the initial burden to establish the validity of its liens.  *See* In re Jack Kardow Plumbing Co., 451 F.2d 123, 134 (5th Cir. 1971) ("Even if the security has passed into the hands of the trustee, a secured creditor need not prove his claim to retain his secured status.").  Rather, under Bankruptcy Rules 3007 and 7001, the initial burden to invalidate Crown's liens rests with the party trying to invalidate the liens.

62.     No party has met its initial burden of pleading, proving, and securing findings in accordance with Bankruptcy Rules 3007 and 7001; accordingly, these legal conclusions are based on a negative inference based on the absence of certain evidence on the record and were premature.

### 1. Crown's Lien is Not Barred By Statute of Limitations

63.     Tex. Civ. Prac. & Rem. Code Ann. § 16.035(a) governs when a lien is barred by statute of limitations.   Section 16.035(a) of the Texas Civil Practice and Remedies Code provides: "A person must bring suit for the recovery of real property under a real property lien or the foreclosure of a real property lien not later than four years after the day the cause of action accrues."  Tex. Civ. Prac. & Rem. Code Ann. § 16.035.  Pursuant to § 16.035(a), the statute of limitations for the enforceability of a real property lien is based on the day the cause of action accrues.

64.     Under Texas law, when there is a series of notes, the statute of limitations does not begin to run against a series of notes until maturity of the last note in such series.  Seydler v. Keuper, 92 S.W.2d 278 (Tex. Civ. App. 1936); Cooper v. Irvin, 110 S.W.2d 1226 (Tex. Civ. App. 1937); Hughes v. Stovall, 135 S.W.2d 603 (Tex. App. 1940).  As discussed above, the maturity date of the last note in the series of notes was June 1, 2012.  Four years from this last maturity date is June 1, 2016.  Accordingly, the statute of limitations has not run on Crown's real property lien.

### 2. Crown's Lien is Valid and Enforceable Against Debtor

65.     Another possible interpretation of the Findings 8 and 11 or conclusions of law is that Crown's lien is unenforceable against the Debtor.   If this is the basis for the conclusion, then it is not supported by Texas law.[12]

66.     Under Texas law, neither a real property lien nor a lien on personal property must be recorded to be enforceable against the Debtor.  With respect to the personal property liens, a

---

[12]     The term "Debtor" here means the counter-party to the security agreement and not a debtor-in-possession's strong-arm powers under § 544 of the Bankruptcy Code to void liens by standing in the shoes of hypothetical entities as of the petition date including a bona fide purchaser.   This scenario is discussed in the next section.

"security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral." Tex. Bus. & Com. Code Ann. § 9.203(a). "In accordance with Texas law, a security interest arises and is enforceable if an agreement is written, value has been given, and the debtor has rights in the collateral." In re Hancock, 126 B.R. 270, 272 (Bankr. E.D. Tex. 1991); *see* Tex. Bus. & Com. Code Ann. § 9.203(b)(1)-(3); Chapman Parts Warehouse, Inc. v. Guderian, 609 S.W.2d 317, 319 (Tex. Civ. App. 1980).

67.     Under Texas law, a conveyance of real property is likewise valid as between the parties even when not recorded. *See*, *e.g.*, In re Perry, 11-35205, 2013 WL 504859, *3 (Bankr. S.D. Tex. Feb. 8, 2013) (holding the "absence of recordation does not affect the validity of the assigned deed of trust between the homeowner and the lender"). Recording is meant just to protect the rights of third parties. *See* First Nat. Bank v. Watson, 271 S.W. 438, 439 (Tex. Civ. App. 1925) aff'd, 285 S.W. 1050 (Tex. Comm'n App. 1926) ("[T]he statutes do not require deeds of trust to be acknowledged and recorded to make them valid and binding as between the parties."). "Although Tex. Civ. Prac. & Rem. Code Ann. § 16.036 requires recording and acknowledgment of an extension of the maturity date on a debt underlying a real property lien, as between the parties, . . . informal, unrecorded extensions of the debt, not meeting the standards of § 16.036 . . . suffice also to extend the lien." *See id.* Accordingly, recording is not an element to establish the enforceability of a lien as against the Debtor.

68.     Here, both the real property lien and the personal property lien are enforceable against the Debtor because the agreements are written, value was given, and the Debtor has rights in the real property and personal property provided as collateral.

**3.**    **Crown's Lien is Not Subject to Avoidance By a *Bona Fide* Purchaser or Judgment Lienholder**

69.    Another possible basis for Findings 8 and 11 or legal conclusion that Crown's liens are unenforceable is that the liens are avoidable by a *bona fide* purchaser or judgment lienholder.   This argument is based on the debtor-in-possession's right to stand in the shoes of such hypothetical entities in accordance with its strong-arm powers set forth in § 544(a) of the Bankruptcy Code.

70.    "[W]hile it is the federal law which provides the trustee with his 'strong-arm' power, his exercise of such power and its extent are governed entirely by the applicable state law." Havee v. Belk, 775 F.2d 1209, 1218-19 (4th Cir. 1985) (citing In re Ludlum Enterprises, Inc., 510 F.2d 996, 999 (5th Cir. 1975)); *see also,* Matter of Hamilton, 125 F.3d 292, 299 (5th Cir. 1997).

71.    The result of a successful attack under § 544(a) of the Bankruptcy Code is that an otherwise enforceable lien can be voided.   Under § 544(a) of the Bankruptcy Code, the debtor-in-possession has the burden of establishing the avoidance of the lien.   *See* In re IFS Fin. Corp., 669 F.3d 255, 261 (5th Cir. 2012); In re Davison, 738 F.2d 931, 936 (8th Cir. 1984) ("This placing of the burden comports with the general rule that a trustee in bankruptcy seeking to avoid a purported security interest bears the burden of proving the imperfection or invalidity of that interest.").   Here, no party has carried this initial burden.   In fact, no adversary proceeding has been commenced to challenge the validity of Crown's lien in accordance with Bankruptcy Rules 3007 and 7001.

72.    Furthermore, there are at least three alternative reasons why the debtor-in-possession will not be successful in avoiding Crown's lien under an avoidance action under Bankruptcy Code § 544(a).   These three alternative reasons include: (i) the Subordinated Deed of

24

Trust, filed in the Chambers County property records in July 2011, is a renewal agreement for purposes of § 16.036 of the Texas Civil Practice and Remedies Code, meaning the statute of limitations was suspended against a *bona fide* purchaser and judgment lienholder; (ii) the UCC Financing Statements, filed with the Chambers County property records in 2006,[13] is a renewal agreement for purposes of § 16.036 of the Texas Civil Practice and Remedies Code, meaning the statute of limitations was suspended against a *bona fide* purchaser and judgment lienholder; and (iii) a hypothetical *bona fide* purchaser and judgment lienholder as of the Petition Date would have had "notice of the suspension of the statute of limitations" under § 16.035 of the Texas Civil Practice and Remedies Code because of both the 2006 UCC Financing Statement (Chambers County) and the Subordinated Deed of Trust filed in 2011 would have given such parties inquiry notice of the lien and thus they could not satisfy the applicable requirements under § 16.035 of the Texas Civil Practice and Remedies Code to avoid Crown's lien.

### a.   Subordinated Deed of Trust Filed In 2011 Is a Renewal Agreement

73.     As noted above, state law governs the exercise of the Debtor's strong-arm powers for the purpose of § 544(a) of the Bankruptcy Code.  Havee, 775 F.2d at 1218-19 (citing In re Ludlum Enterprises, Inc., 510 F.2d, 999).   The applicable state law here is set forth in §§ 16.035 and 16.036 of the Texas Civil Practice and Remedies Code.   Section 16.035 provides in relevant part:

> The running of the statute of limitations is not suspended against a bona fide purchaser for value, a lienholder, or a lessee who has no notice or knowledge of the suspension of the limitations period and who acquires an interest in the property when a cause of action on an outstanding real property lien has accrued for more than four

---

[13]     Please note that the 2006 UCC Financing Statement is in the record for the hearing on the Motion to Credit Bid.  This document is sufficient evidence to demonstrate that the Debtor will be unable to avoid Crown's lien.

years, except as provided by . . . Section 16.036, providing for
recorded extensions of real property liens.

Tex. Civ. Prac. & Rem. Code Ann. § 16.035(c).  Section 16.036, in turn, provides in relevant

part:

> (a) The party or parties primarily liable for a debt or obligation
> secured by a real property lien, as that term is defined in Section
> 16.035, may suspend the running of the four-year limitations
> period for real property liens through a written extension
> agreement as provided by this section.
>
> (b) The limitations period is suspended and the lien remains in
> effect for four years after the extended maturity date of the debt or
> obligation if the extension agreement is:
>
> > (1) signed and acknowledged as provided by law for a deed
> > conveying real property; and
> >
> > (2) filed for record in the county clerk's office of the county
> > where the real property is located.
>
> (c) The parties may continue to extend the lien by entering,
> acknowledging, and recording additional extension agreements.
>
> (d) The maturity date stated in the original instrument or in the date
> of the recorded renewal and extension is conclusive evidence of
> the maturity date of the debt or obligation.

Tex. Civ. Prac. & Rem. Code Ann. § 16.036.  Accordingly, filing an extension agreement under

§ 16.036 is a *prima facie* defense to a *bona fide* purchaser and judgment lienholder seeking to

exercise its rights under § 16.035 of the Texas Civil Practice and Remedies Code.

74.     The Subordinated Deed of Trust filed in 2011 is an extension agreement of the

Deed of Trust.   "It is well-established in Texas law that separate instruments executed at the

same time, for the same purpose, and in the course of the same transaction are to be considered

as one instrument, and are to be read and construed together."  The Cadle Co. v. Butler, 951

S.W.2d 901, 908-09 (Tex. App. 1997) (citing Jones v. Kelley, 614 S.W.2d 95, 98 (Tex. 1981));

Miles v. Martin, 159 Tex. 336, 321 S.W.2d 62, 65 (1959); Veal v. Thomason, 138 Tex. 341, 159

S.W.2d 472, 475 (1942); Braniff Inv. Co. v. Robertson, 124 Tex. 524, 81 S.W.2d 45, 50

(Comm'n App. 1935).   Here, the Subordinated Deed of Trust is dated the same day as the Sixth

Renewal.  These instruments were entered into at the same time, for the same purpose, and in the

course of the same transaction.  The Subordinated Deed of Trust provides that it is subordinate to

the Deed of Trust as extended by the Sixth Renewal.  Accordingly, the filing of the Subordinated

Deed of Trust constitutes a renewal agreement under § 16.036 of the Texas Civil Practice and

Remedies Code, and, therefore, the *bona fide* purchaser and judgment lienholder are not entitled

to the benefits set forth in § 16.035(c) of the Texas Civil Practice and Remedies Code.

75.    The recitations in the Subordinated Deed of Trust acknowledging the renewal of

the Note and the associated Deed of Trust are sufficient to serve as a renewal agreement.  *See*

Fed. Mortgage Co. v. State Nat. Bank of Corsicana, 254 S.W. 1002 (Tex. Civ. App. 1923)

(providing that recitations in subsequent Deed of Trust constitute written renewal and that

execution of a formal renewal agreement is not necessary); *see also*, In re Prime Ventures, Ltd.,

68 B.R. 686 (N.D. Cal. 1986), aff'd sub nom. Duck v. Syntek Mgmt., Inc., 838 F.2d 473 (9th Cir.

1988) (applying Texas law and determining that subsequent wraparound deed of trust constitutes

an extension agreement even though lienholder was not a party to the wraparound deed of trust).

Furthermore, it does not matter that interim extension agreements were not filed; even if a lien

was barred by the statute of limitations, which it was not, the filing of an extension agreement

revives and restores the lien.  Seydler v. Keuper, 92 S.W.2d 278 (Tex. Civ. App. 1936).

**b.**       **UCC Financing Statements Filed In 2006 Is a Renewal Agreement**

76.    The 2006 UCC Financing Statement is also a renewal agreement.  As noted

above, under Texas law, separate instruments executed at the same time, for the same purpose,

and in the course of the same transaction are to be considered as one instrument.  The Cadle Co.,

951 S.W.2d at 908-09.  On June 1, 2006, Hydrocarbon and the Original Lenders entered into a

27

transaction that included the following five documents:  (i) the Fourth Renewal, (ii) the New Note, (iii) the Assignment of Rents, (iv) the 2006 UCC Financing Statement (Chambers County); and (v) the 2006 UCC Financing Statement (SOS).  These instruments were executed at the same time, for the same purpose, and in the course of the same transaction.   Accordingly, the filing of the 2006 UCC Financing Statement constitutes a renewal agreement under § 16.036 of the Texas Civil Practice and Remedies Code and thus serves as a *prima facie* defense to a *bona fide* purchaser and judgment lienholder exercising their rights under § 16.035(c) of the Texas Civil Practice and Remedies Code.

77.    The Fourth Renewal extends the maturity date of the Note to June 1, 2010.  (*See* Ex. A-9 at ¶ 2.)  Four years after that would be June 1, 2014, which is well after the Petition Date.   Accordingly, because the filing of the 2006 UCC Financing Statement constitutes a renewal agreement, the *bona fide* purchaser and judgment lienholder as of the Petition Date could not avoid the lien.

### c.    *Bona Fide* Purchaser and Judgment Lienholder Had Inquiry Notice and Do Not Satisfy Requirements to Avoid Liens Under Texas Law

78.    Tex. Civ. Prac. & Rem. Code Ann. § 16.035(c) provides:

> The running of the statute of limitations is not suspended against a bona fide purchaser for value, a lienholder, or a lessee who ***has no notice or knowledge of the suspension of the limitations period*** and who acquires an interest in the property when a cause of action on an outstanding real property lien has accrued for more than four years, except as provided by . . . Section 16.036, providing for recorded extensions of real property liens.

Tex. Civ. Prac. & Rem. Code Ann. § 16.035(c) (emphasis added).   This is the statutory basis for the Objecting Parties' argument that Crown does not have an enforceable lien.

79.    Section 16.035(c) of the Texas Civil Practice and Remedies Code bestows a *bona fide* purchaser and a judgment lienholder a great benefit – the running of the statute of limitations

is not suspended against them – if two conditions are met (i) the party must have had no notice or knowledge of the suspension of the limitations, and (ii) the party must have acquired the interest when the cause of action on the real property lien has accrued for more than four years (together, the "Threshold Requirements").   The statute goes on to provide the *prima facie* defense to such parties' rights – the filing an extension agreement under § 16.036 of the Texas Civil Practice and Remedies Code (discussed above).

80.    Based on the statutory scheme of § 16.035(c) of the Texas Civil Practice and Remedies Code, one does not have to consider the filing of extension agreements under § 16.036 if the *bona fide* purchaser or judgment lienholder cannot satisfy the Threshold Requirements.

81.    A hypothetical *bona fide* purchaser and judgment lienholder as of the Petition Date cannot satisfy the Threshold Requirements because they had notice of the suspension of the statute of limitation with respect to Crown's lien.  For the purposes of § 544(a) of the Bankruptcy Code, while actual knowledge is not relevant, constructive or inquiry notice will defeat the debtor-in-possession's standing as a hypothetical *bona fide* purchaser or judgment lienholder to avoid a lien.  Constructive notice is notice the law imputes to a person not having personal information or knowledge.  Flack v. First Nat. Bank of Dalhart, 148 Tex. 495, 226 S.W.2d 628, 632 (1950).  "An instrument that is properly recorded in the proper county is notice to all persons of the existence of the instrument."  Tex. Prop. Code Ann. § 13.002.

82.    The debtor-in-possession is also subject to inquiry notice that such hypothetical *bona fide* purchaser or judgment lienholder would have as of the Petition Date.  "The duty of inquiry is governed by standards of reasonableness, extending to those things which a reasonably diligent inquiry and exercise of the means of information at hand would have discovered."  Matter of Hamilton, 125 F.3d 292, 300 (5th Cir. 1997) ("To find inquiry notice inapplicable to a

hypothetical purchaser or trustee under [Section] 544(a) [of the Bankruptcy Code] would place the hypothetical trustee or purchaser in a better position than other purchasers under state law.")

83.     "[A] subsequent purchaser is [] charged with notice of the terms in deeds which form an essential link in his chain of ownership."  Hue Nguyen v. Chapa, 305 S.W.3d 316, 324 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (internal citation omitted); Portman v. Earnhart, 343 S.W.2d 294, 297 (Tex. Civ. App. 1960).  "A purchaser is bound by every recital, reference, and reservation contained in or fairly disclosed by an instrument that forms an essential link in the chain of title under which he claims."  Westland Oil Dev. Corp. v. Gulf Oil Corp., 637 S.W.2d 903, 908 (Tex. 1982).  "The rationale of the rule is that any description, recital of fact, or reference to other documents puts the purchaser upon inquiry, and he is bound to follow up this inquiry, step by step, from one discovery to another and from one instrument to another, until the whole series of title deeds is exhausted and a complete knowledge of all the matters referred to and affecting the estate is obtained."  Matter of Hamilton, 125 F.3d at 300 (citing Westland Oil Dev. Corp., 637 S.W.2d at 908).

84.     A *bona fide* purchaser and judgment lienholder as of the Petition Date would have had inquiry notice of the suspension of the statute of limitations with respect to Crown's lien by virtue of the 2006 UCC Financing Statement (Chambers County) and the Subordinated Deed of Trust filed in 2011.

85.     This is consistent with Cadle Co., the case relied on by the Objecting Parties.  951 S.W.2d 901 (Tex. App. 1997).   The facts of Cadle Co. are as follows.  On November 19, 1987, Butler recorded a deed of trust on property owned by the Weaklys.  *Id*. at 905.  That deed of trust secured a promissory note that had a maturity date of November 19, 1988.  *Id*.  Butler and the

Weaklys agreed to oral extensions and renewals of the promissory note for each year from 1988 through 1993.  *Id.*

86.     On March 28, 1993, Cadle Co. won a default judgment that it could satisfy against the Weaklys' property and recorded the judgment on May 12, 1993.  *Id.*   On October 30, 1993, Butler and the debtors executed a modification agreement to the note and deed of trust and recorded it on November 2, 1993.

87.     Butler brought suit in June 1994 for a declaratory judgment that his lien was superior in priority to Cadle Co.'s.  *Id.*  Applying §§ 16.035, 16.036 and 16.037 of the Texas Civil Practice and Remedies Code, the court held that Cadle Co.'s lien had priority.  *Id.* at 915. Butler's original deed of trust and promissory note had a maturity date of November 19, 1988, and, therefore, under § 16.036, four years after that date, November 19, 1992, the note was deemed paid and the lien was deemed void.  *Id.* at 909.  This was the result despite the unrecorded renewals and extensions because although "[o]ral extensions of a debt's maturity are valid and enforceable between the parties to the agreement," they are "binding against subsequent lienholders only if the prior lien did not appear to be barred of record when the later lien was acquired."  *Id.* at 910 (citing cases).  In Cadle Co., the "prior lien" did "appear to be barred of record" when Cadle Co. recorded its judgment during the "gap period."  *Id.* at 913. Therefore, Butler's attempt to record his lien six months after Cadle Co. did not give him priority.  *Id.*

88.     Cadle Co. differs from this case in an important respect.  While both cases have a gap period where there were unrecorded renewals and extensions, in Cadle Co., a lienholder recorded a lien during the gap period.  In our case, by contrast, the parties themselves ended the gap period by recording the Subordinated Deed of Trust.  The 2011 Deed of Trust, which by its

31

terms provides that it is subordinate to the Deed of Trust as extended by the Sixth Renewal, puts the world on notice that a prior lien exists on the property and suspended the statute of limitations. *See* Mercer v. Daoran Corp., 676 S.W.2d 580, 581 (Tex. 1984) (referencing earlier lien in newly recorded note renews the earlier lien); *see also,* Cadle Co., 951 S.W.2d at 912-13 ("[a]lthough an oral contract can be executed by performance, a parol agreement is logically incapable of being filed or recorded; there must be an instrument of some sort.").

89.     Here, the Debtor, as a hypothetical *bona fide* purchaser or judgment lienholder, entered the picture as of the Petition Date, after the recording of the 2006 UCC Financing Statement (Chambers County) and the Subordinated Deed of Trust in 2011.  Accordingly, unlike Cadle Co., the 2006 UCC Financing Statement (Chambers County) and the Subordinated Deed of Trust created record notice that the statute of limitations under the Deed of Trust was suspended which, under § 16.035 of the Texas Civil Practice and Remedies Code, the statute of limitations had not yet run.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.035.

90.     Similarly, the facts of In re Tilton, cited by the Committee, are distinguishable from this case.  297 B.R. 478 (Bankr. E.D. Tex. 2003).  In Tilton the court noted that there was an absence of other documents recorded in the real property records.  Here, the Subordinated Deed of Trust and the 2006 UCC Financing Statement (Chambers County) are each recorded in the real property records. Accordingly, as of the Petition Date, everyone had notice of the validity and enforceability of Crown's claim and lien.

## CONCLUSION

WHEREFORE, in consideration of the foregoing and the Affidavit, Crown respectfully requests entry of an order substantially in the form attached hereto and such other relief that is just and proper.

Dated:  July 29, 2014

Respectfully submitted,

DIAMOND MCCARTHY, LLP

*/s/ Charles M. Rubio*
Kyung S. Lee
State Bar No. 12128400
Charles M. Rubio
State Bar No. 24083768
Diamond McCarthy, LLP
909 Fannin Street, 15th Floor
Two Houston Center
Houston, Texas 77010
Telephone: (713) 333-5100
Facsimile:  (713) 333-5195

COUNSEL TO
CROWN FINANCIAL, LLC

## CERTIFICATE OF SERVICE

I certify that on July 29, 2014, a true and correct copy of the foregoing document was served by Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas to all parties registered to receive such service and via *U.S. First Class Mail* to the parties on the attached Service List, as indicated.

*/s/ Charles M. Rubio*
Charles M. Rubio

33